UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GERMAN H.,                          )     Case No. 2:20-cv-09881-SP
                                    )
              Plaintiff,            )
                                    )
        v.                          )     MEMORANDUM OPINION AND
                                    )     ORDER
                                    )
KILOLO KIJAKAZI, Acting             )
Commissioner of Social Security     )
Administration,                     )
                                    )
              Defendant.            )
_____)

**I.**

**INTRODUCTION**

On October 27, 2020, plaintiff German H. filed a complaint against

defendant, the Commissioner of the Social Security Administration

("Commissioner"), seeking a review of a denial of a period of disability, disability

insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties

have fully briefed the issue in dispute, and the court deems the matter suitable for

adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative

Law Judge ("ALJ") properly considered the opinion of plaintiff's treating physician, Dr. Kayvanfar.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 5-11; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-7.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered Dr. Kayvanfar's opinion and any deficiency in the analysis was harmless.  Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 50 years old on the alleged disability onset date, has a tenth grade education.  AR at 94, 119, 130.  Plaintiff has past relevant work as a machine operator and a maintenance mechanic helper.  AR at 113.

On May 16, 2017, plaintiff filed applications for DIB and SSI, alleging he became disabled on July 25, 2016 due to a lumbar disc bulge, bilateral shoulder pain, bilateral elbow pain, left knee pain, two pelvic hernias, high blood pressure, arthritis of the back, depression, and anxiety.  AR at 119-20, 130-31.  The agency denied the application initially and on reconsideration.  AR at 181-90, 193-205.

On October 4, 2019, plaintiff, represented by counsel and assisted by an interpreter, appeared and testified at a hearing before the ALJ.  AR at 88-113.  The ALJ also heard testimony from Stephen Davis, a vocational expert.  AR at 110-17.  On October 28, 2019 the ALJ issued a decision denying plaintiff's claim for benefits.  AR at 48-59.

Applying the well-known five-step sequential evaluation process, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since July 25, 2016, the alleged onset date.  AR at 50.

At step two, the ALJ found plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine, hernias, bilateral shoulder impingement syndrome, torn meniscus and ACL of the left knee, and osteoarthritis. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  AR at 52.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform light work, including lifting 20 pounds occasionally and 10 pounds frequently, and standing and/or walking up to six hours, and sitting up to six hours, in an eight-hour workday.  AR at 53.  The ALJ also found the additional limitations that plaintiff: needs a cane to walk; can occasionally push and pull with the upper and lower extremities; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently stoop, kneel, crouch, and crawl; can occasionally reach overhead bilaterally; and must avoid concentrated exposure to cold and vibrations.  *Id.*

The ALJ found at step four that plaintiff was unable to perform his past relevant work as a machine operator or maintenance mechanic helper.  AR at 58.

At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including self-service cashier, marker, and lens matcher.  AR at 58-59.  Consequently, the ALJ concluded

---

[1]  Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  plaintiff did not suffer from a disability as defined by the Social Security Act.  AR
2  at 59.

3      Plaintiff filed a timely request for review of the ALJ's decision, which the
4  Appeals Council denied.  AR at 1-9.  The ALJ's decision stands as the final
5  decision of the Commissioner.

6                                    **III.**

7                        **STANDARD OF REVIEW**

8      This court is empowered to review decisions by the Commissioner to deny
9  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
10 Administration must be upheld if they are free of legal error and supported by
11 substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
12 (as amended).  But if the court determines the ALJ's findings are based on legal
13 error or are not supported by substantial evidence in the record, the court may
14 reject the findings and set aside the decision to deny benefits.  *Aukland v.*
15 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
16 1144, 1147 (9th Cir. 2001).

17     "Substantial evidence is more than a mere scintilla, but less than a
18 preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such
19 "relevant evidence which a reasonable person might accept as adequate to support
20 a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
21 F.3d at 459.  To determine whether substantial evidence supports the ALJ's
22 finding, the reviewing court must review the administrative record as a whole,
23 "weighing both the evidence that supports and the evidence that detracts from the
24 ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be
25 affirmed simply by isolating a specific quantum of supporting evidence.'"
26 *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
27 Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

28

                                        4

1  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

2  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

3  1992)).

4  ### IV.

5  ### DISCUSSION

6       Plaintiff argues that the ALJ improperly rejected his treating physician's

7  opinion.  P. Mem. at 5-12.  Specifically, plaintiff contends that in discounting Dr.

8  Kayvanfar's opinion the ALJ failed to articulate sufficient reasons supported by

9  substantial evidence.  *Id*.

10       RFC is what one can "still do despite [his or her] limitations."  20 C.F.R.

11  § 404.1545(a)(1).  Among the evidence an ALJ relies on in an RFC assessment is

12  medical evidence and opinions.  20 C.F.R. § 404.1545(a)(3).

13       For claims filed before March 27, 2017, the opinion of a treating physician

14  was given more weight then an examining physician's opinion, which was given

15  more weight than a reviewing physician's opinion.  *See Holohan v. Massanari*, 246

16  F.3d 1195, 1202 (9th Cir. 2001).  Under this previous hierarchy of medical

17  opinions framework, the Ninth Circuit required an ALJ to provide clear and

18  convincing reasons supported by substantial evidence to reject an uncontradicted

19  opinion of a treating or examining physician, or specific and legitimate reasons

20  supported by substantial evidence to reject a contradicted opinion of a treating or

21  examining physician.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (as

22  amended).

23       Under the revised regulations, for cases filed on or after March 27, 2017

24  such as this one, an ALJ will no longer defer or give specific evidentiary weight to

25  any medical opinions.  20 C.F.R. § 404.1520c(a).

26       For claims subject to the new regulations, the former hierarchy of

27  medical opinions – in which we assign presumptive weight based on

28

1    the extent of the doctor's relationship with the claimant – no longer

2    applies.  Now, an ALJ's decision, including the decision to discredit

3    any medical opinion, must simply be supported by substantial

4    evidence.

5    *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  As such, the previous

6    requirement that an ALJ provide "specific and legitimate" reasons to reject a

7    treating or examining physician's opinion "is clearly irreconcilable" with the new

8    regulations.  *Id.* at 790.

9         An ALJ now will consider the persuasiveness of the medical opinions and

10   findings based on five factors: (1) supportability; (2) consistency; (3) relationship

11   with the claimant; (4) specialization; and (5) other factors that tend to support or

12   contradict the medical opinion.  20 C.F.R. § 404.1520c(a), (c).  The most important

13   of these factors are supportability and consistency.  20 C.F.R. § 404.1520c(a),

14   (b)(2).  The ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all of the

15   medical opinions' from each doctor or other source . . . and 'explain how [he or

16   she] considered the supportability and consistency factors' in reaching these

17   findings."  *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b), (b)(2)).  The

18   ALJ may, but is not required to, explain how he or she considered the other three

19   factors.  20 C.F.R. § 404.1520c(b)(2).  But when two or more medical opinions

20   "about the same issue are both equally well-supported . . .  and consistent with the

21   record . . . but are not exactly the same," the ALJ is then required to explain how

22   "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were

23   considered.  20 C.F.R. § 404.1520c(b)(3).

24        With respect to supportability, the regulations state: "[t]he more relevant the

25   objective medical evidence and supporting explanations presented by a medical

26   source are to support his or her medical opinion(s) or prior administrative medical

27   finding(s), the more persuasive the medical opinions or prior administrative

28

1    medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  Regarding consistency,

2    the regulations state: "[t]he more consistent a medical opinion(s) or prior

3    administrative medical finding(s) is with the evidence from other medical sources

4    and nonmedical sources in the claim, the more persuasive the medical opinion(s) or

5    prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

6          Dr. Kayvanfar completed a physical capacities evaluation on September 2,

7    2019, and opined that in an eight-hour workday plaintiff could: sit, stand, or walk

8    for three hours, and would need to alternate positions every 30 minutes; frequently

9    engage in simple grasping; occasionally push and pull with both upper extremities;

10   and could occasionally use feet for repetitive movements as in operating foot

11   controls.  AR at 1167.  Additionally, Dr. Kayvanfar opined that plaintiff could lift

12   and carry up to 10 pounds frequently and 20 pounds occasionally; occasionally

13   perform most postural activities, but never crawl; and had mild restrictions with

14   respect to driving and exposure to dust, fumes, and gases.  AR at 1167-68.  The

15   doctor further opined that plaintiff would be absent from work about four days per

16   month and would be off task 20 percent of a typical workday.  AR at 1168.

17         In reaching her RFC determination, the ALJ did not find Dr. Kayvanfar's

18   opinion to be persuasive.  AR at 57.  The ALJ first reasoned that the doctor's

19   opinion was "inconsistent with the medical evidence, which shows fairly limited

20   objective evidence of severe impairments and treatment."  *Id.*  Second, the ALJ

21   determined that Dr. Kayvanfar's opinion was inconsistent with plaintiff's

22   testimony that he can lift 20 pounds.  *Id.*  Finally, the ALJ found Dr. Kayvanfar's

23   opinion "somewhat inconsistent" with plaintiff's ability to work for Uber at least

24   one day a week.  *Id.*  Plaintiff challenges all of these reasons given.

25         Plaintiff first argues that the ALJ mischaracterized  Dr. Kayvanfar's opinion

26   regarding plaintiff's ability to lift or carry up to 20 pounds.  P. Mem. at 7.  The

27   ALJ stated that Dr. Kayvanfar opined plaintiff could "lift and/or carry up to 10

28

                                          7

pounds frequently and 10 pounds occasionally." AR at 57. This is incorrect, since Dr. Kayvanfar in fact opined that plaintiff could lift and carry up to 10 pounds frequently and 20 pounds occasionally. AR at 1167. Given Dr. Kayvanfar's actual opinion, there is no inconsistency between it and plaintiff's testimony that he can lift 20 pounds. As such, this was not a legitimate reason to discount Dr. Kayvanfar's opinion. This error, however, was harmless. An ALJ's error is harmless where it is inconsequential to the ultimate non-disability determination. *Stout v. Comm'r, Soc. Sec. Admin.* , 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Burch v. Barnhart* , 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."). Here, although the ALJ discounted Dr. Kayvanfar's opinion because it was inconsistent with plaintiff's own testimony that he could lift 20 pounds when in fact it was not, the ALJ's RFC determination was consistent on this point with both plaintiff's testimony and Dr. Kayvanfar's opinion, in that the ALJ also found plaintiff could "lift[] up to 20 pounds occasionally and 10 pounds frequently." AR at 53. Thus, the ALJ's mistaken recitation of Dr. Kayvanfar's opinion and resulting error in finding it inconsistent with what plaintiff testified he could lift had no ultimate effect on her RFC determination.[2]

Plaintiff next argues that the ALJ erred by discounting Dr. Kayvanfar's opinion as "somewhat inconsistent" with plaintiff's ability to work for Uber at least one day a week. P. Mem. at 8. As indicated by the ALJ, Dr. Kayvanfar opined that plaintiff could only sit for three hours in an eight hour work day. AR at 1167. The ALJ found this opinion inconsistent with plaintiff's testimony that

---

[2]    This was not the ALJ's only error in recounting Dr. Kayvanfar's opinion. She also stated Dr. Kayvanfar found plaintiff should never work at unprotected heights, around moving machinery, or with exposure to marked changes in temperature (AR at 57), when in fact Dr. Kayvanfar determined plaintiff had no restrictions in those areas. AR at 168.

8

1    for about a year he drove for Uber "one day a week, [or] two days a week" (AR at

2    94), which would in theory require sitting longer than three hours.  But as plaintiff

3    notes, he clearly testified that he stopped driving for Uber on July 25, 2016, his

4    alleged onset date.  *See* AR at 94, 309, 329.  Indeed, he testified that he stopped

5    driving for Uber because he almost had an accident when he needed to brake but

6    his legs did not respond.  AR at 98.  There is no apparent inconsistency between

7    plaintiff's ability to drive for Uber prior to his alleged disability onset and Dr.

8    Kayvanfar's opinion three years later that by then plaintiff could only sit for three

9    hours in an eight-hour workday.  Thus, this was not a persuasive reason to reject

10   Dr. Kayvanfar's opinion.

11          What remains, then, is the primary reason the ALJ gave for rejecting Dr.

12   Kayvanfar's opinion, that it was inconsistent with the medical evidence.  In

13   particular, the ALJ found the medical records showed "fairly limited objective

14   evidence of severe impairments and treatment."  AR at 57.  Plaintiff argues that

15   this is an insufficient explanation.  P. Mem. at 8.

16          If the record as a whole does not support the medical source's opinion, the

17   ALJ may reject that opinion.  *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d

18   1190, 1195 (9th Cir. 2004).  Items in the record that may not support the treating

19   physician's opinion include clinical findings from examinations, conflicting

20   medical opinions, conflicting physician's treatment notes, and the claimant's daily

21   activities.  *See id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216-217 (9th Cir. 2005);

22   *Connett v. Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003); *Morgan v. Comm'r of*

23   *Soc. Sec. Admin*., 169 F.3d 595, 601-02 (9th Cir. 1999).

24          Here, the ALJ provided an overview of plaintiff's medical records.  AR at

25   54-56.  On March 20, 2014 plaintiff sustained an injury as a result of a slip and fall

26   accident at work while lifting approximately 50 pounds.  AR at 412.  When

27   plaintiff applied for disability, he alleged that walking was painful and he

28

sometimes lost balance.  AR at 342.  He complained of lower back pain as well as injuries to his left shoulder, pain in the right shoulder and left elbow, and received worker's compensation treatment for his injuries.  *Id*.  MRI records from December 2016 showed: a mild to moderate tendonitis in the left shoulder (AR at 880); mild discogenic disease at L4 and L5-S1 in the lumbar spine, as well as multilevel mild to moderate foraminal stenosis (AR at 879).  Radiology records from March and April, 2017, revealed that: plaintiff's left knee showed a tear (AR at 904); bilateral elbows were unremarkable (AR at 906-09); his right shoulder evidenced only mild findings, except for mild to moderate tendinosis of the superior distal fibers of the subscapularis, and mild to moderate degenerative changes of the acromioclavicular joint with downsloping of acromion  (AR at 910-911); and his left shoulder evidenced inferolateral acromion causing impingement on the supraspinatus tendon with tendonsis (AR at 913).

Plaintiff was subsequently recommended physical therapy as well as home exercises.  AR at 857, 998.  Plaintiff also received chiropractic treatment.  AR at 629-648.  Plaintiff also testified to receiving injections, which were recommended by Dr. Kayvanfar.  AR at 100, 103, 1171.

Records of physical examinations from May 2018 and February 2019 show range of motion 80% of normal with tender flexion rotation and lateral flexion 7-8/10, and "collateral and cruciate ligaments maneuvers/tests [were] normal.  AR at 1121, 1132.  Meniscus tests were also normal on the right and left knee.  *Id*.

In March 2019, plaintiff reported difficulty standing, sitting and walking for short periods of time.  AR at 1127.  But a radiologic report of the right and left knee showed minimal degenerative changes, and imaging of the right shoulder indicated a normal finding for lateral shoulder.  AR at 1128.  In June 2019, an MR of the left knee joint showed nondisplaced oblique tear of the posterior horn of the medial meniscus, superficial low grade chondral fissuring at the median ridge of

the patella, and mild mucoid degeneration versus low grade sprain of the anterior cruciate ligament, no acute osseous abnormality.  AR at 1181.  An MR of the left shoulder joined revealed mild to moderate supraspinatus tendinosis with low grade fraying of the anterior fibers and mild subacromial/subdeltoid bursel inflamation, mild bicep tendinosis.  AR at 1183.  At an examination in July 2019, the MRI of the left knee showed minimal arthritis and oblique tear of the posterior horn of the medial meniscus with spraining of anterior cruciate ligament.  AR at 1108.

Considering the medical evidence in the record as a whole, there is substantial evidence to support the ALJ's finding that the objective evidence of severe impairments is "fairly limited," as was plaintiff's treatment, and was thus inconsistent with Dr. Kayvanfar's opinion.  It is worth noting that the ALJ's RFC determination was consistent with the limitations found by Dr. Kayvanfar in many respects, but the ALJ did not adopt Dr. Kayvanfar's opinion that, for example, plaintiff is limited to standing, walking, and sitting for three hours a day, and to only occasional postural activities.  While it would have been helpful if the ALJ had more precisely pointed to the evidence she found inconsistent with Dr. Kayvanfar's opinion on these points, on balance the court finds the ALJ adequately explained how she considered the supportability and consistency factors in finding Dr. Kayvanfar's opinion not persuasive.  *See Woods*, 32 F.4th at 792.  This includes her finding that plaintiff's treatment was fairly limited.  Although plaintiff is correct that steroid injections may not be considered conservative (*see Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014)), the remainder of her treatment was fairly limited when considered next to some of limitations opined by Dr. Kayvanfar.

The court notes that the ALJ also considered the findings of Dr. T. Liu's consultative examination conducted on May 26, 2019, and found them persuasive.  AR at 57.  Dr. T. Liu reported that plaintiff's gait was slow and he refused to walk

11

on toes or heels but was able to squat about 30%, he had decreased motion in the shoulders, and no tenderness over the lumbosacral spine. AR at 1035. Plaintiff's range of motion of elbows and wrists were "grossly normal." AR at 1036. The doctor documented that plaintiff's knees were stable with no tenderness or effusion, negative stress tests and "grossly normal" range of motion. AR at 1037. The doctor opined plaintiff was capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently, walking and standing six hours in an eight hour work day, sitting without restriction, and performing postural activities occasionally. AR at 1039-45.

Viewing the evidence as a whole, the court concludes that plaintiff has failed to show that any of the alleged errors made by the ALJ in considering Dr. Kayvanfar's opinion and formulating the RFC were harmful. Indeed, the court is persuaded that the ALJ's RFC determination was supported by substantial evidence. *See Aukland*, 257 F.3d at 1035 ("Substantial evidence is more than a mere scintilla, but less than a preponderance.").

In sum, the court finds the ALJ properly discounted Dr. Kayvanfar's opinion as inconsistent with the medical evidence, and although the ALJ gave other reasons that were not supported by substantial evidence, they were harmless.

## V.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: September 30, 2022

_____
SHERI PYM
United States Magistrate Judge